21-1149. Yes, sir. When you're ready. Thank you, Your Honor. Good morning, may it please the court. My name is Meredith Esser and I'm arguing this case on behalf of Tyrell Braxton. This case is about whether a valid community caretaking rationale would have inevitably justified the seizure of Mr. Braxton's backpack when there was an immediately available alternative to seizure, turning the backpack over to Ms. Gay. On these facts, the government cannot show that officers would have inevitably ended up with the backpack when a third party known to Mr. Braxton was on the scene, capable of safeguarding it and willing to take it into her possession. The community caretaking doctrine has two main parts, protection of the public and protection of personal property. Here, protection of the public was simply not in play. The only rationale put forth by the government that would have justified the officer's seizure of the backpack was to safeguard Mr. Braxton's property. And indeed, this was the basis of the district court's ruling. The district court ruled that the community caretaking rationale of protecting the individual's property justified the continued seizure of the backpack. But on these facts, that justification makes no sense. Police can't invoke community caretaking rationales when their involvement isn't actually necessary. It simply wasn't necessary here for officers to exercise any community caretaking function because Ms. Gay was able to take custody of the If there are no circumstances under which a backpack or other personal items would not go to the police department after a valid arrest, then NAP is essentially a dead letter. Here, reasonable alternatives must be considered in order to avoid intrusions, unnecessary intrusions into the Fourth Amendment. And the Carr impoundment cases are instructive because they explain that officers must consider reasonable alternatives to impoundment or seizure in order to avoid infringement on Fourth Amendment rights. I would direct the court's attention to the Sanders case and the factors set forth in Sanders, which really center on whether reasonable alternatives to impoundment or seizure exist. For example, in Woodard and Venecia, it suggested that if there are obvious alternatives to impoundment or seizure and officers don't avail themselves of those alternatives, that action is suggestive of pretext. For example, in Woodard, this court said that the officer's failure to consider reasonable alternatives to impoundment of the car shows that the actual motive for impoundment was pretextual or is indicative of pretext. And similarly, in Venecia, this court said that where an alternative to impoundment doesn't threaten public safety or convenience, impoundment is less likely to be justified by a community caretaking rationale. Counsel, what do you do about the judge's determination that Braxton didn't ask the backpack to be given to Ms. Gay? Yes, Your Honor, I have three responses to that question. The first is that on these facts, I think it's difficult to infer that Mr. Braxton didn't actually want the backpack to go to Ms. Gay. She says, may I have the backpack? She's twice refused. Mr. Braxton is being arrested by three of her requests to have the backpack turned over. He says something along the lines of, can she at least have the money, implying that he wanted her to have the backpack and the money, but they've already refused her the request to take custody of the backpack. The other issue here is that we're in an inevitable discovery context, and so there is some question about the significance of the facts as they actually occurred. I think it's possible to infer the intent of the parties from the facts, but I don't think that the facts as they actually occurred are sufficient to assume that Officer Carman understood the relevant law, specifically the Knapp case. When these facts played out, he had in his mind that he was able to search the backpack incident to arrest, which of course was not true. So under the community caretaking rationale or doctrine, we have to ask, or sorry, under the inevitable discovery doctrine, we need to go back in time and ask how would those facts have played out differently? And I think if, so Ms. Gay says, can I get the bag? And Officer Carman immediately says, nope. But what would have happened if she had said, can I get the bag? And he didn't really realize, or he didn't think that he could search it. He probably would have asked Mr. Braxton. Can I interrupt? I want to make sure I understand what you're arguing. It's the government's burden, correct, at this point, to show that they would have had inevitable discovery through whatever means. And when you talk about this kind of counterfactual analysis, as I understand it, what you're saying is it's the government's burden now to show what would have happened. And it seemed to me that the district court here was focusing on what did happen when it analyzed the government's burden. But at the hearing, did the government, I guess, are you suggesting that at the hearing the government should have produced that testimony from the, somehow from the officer of what would have happened? Does that make sense? Yes, I see where you're arguing. Because everybody's talking about the facts as they did happen, but you're suggesting it should have been asked what would you have done if you hadn't said, nope, nope, what happened at the hearing? Because there was a hearing where the government had the opportunity to prove this counterfactual. That's correct. And the government, so I think our argument, yes, is that the government needed to show that at the hearing. And then also on appeal, the review is whether the That does answer, and I didn't really see your brief arguing that the government needed to produce that evidence at the hearing. So that's what I was wondering about. Because everybody talks about the fact that this, that nobody asked or nobody said to him, can she take the bag? But why is that important at this point even? I agree that I think that particular point wasn't quite teased out at the hearing, but I believe that defense counsel said multiple times that it was the government's burden to prove this. I don't know that that word counterfactual was used, but it was the government's burden to prove the inevitability of the seizure, which they couldn't do. And just to continue. Just by that point, that's not typical, but at that point at the hearing, they'd already conceded that the search was unlawful. Correct. So the hearing was only about their burden to show what would have happened. Yes, the hearing was only about whether the inevitable discovery aspect of the case had been shown by preponderance of the evidence. And to continue. So I think that's the first point is that I think of the facts you can infer that Mr. Braxton wanted the backpack to go to Ms. Gay. The second point is that we're in an environment where the facts that they've played out don't necessarily have as much significance as they would in a normal case. And then the third response is that the cases say that officers have a responsibility to consider reasonable alternatives to impoundment. So even if Mr. Braxton didn't say, oh, yes, I want to give her the backpack, it was under this court's cases, officers must at least consider those reasonable alternatives. And it's clear in this case that they didn't do that. And that's, you know, the government in its brief makes some points about how backpacks and cars are different. And I take that point. But I think if we zoom out to sort of a community caretaking rationale writ large, it's really about whether this intrusion into the Fourth Amendment is necessary under the I believe that that's and the government can correct me. I believe that that's what happens if the property has already gone to the police department. I don't think there's a policy about what happens if the seizure is happening on the scene. That's my understanding. Is that the notarization? I'm just trying to figure out why that would be a requirement. The notarization? Yes. And what occurs to me, and I'd be interested in your response, is that you just don't know what's going on. And when officers turn over stuff to a third party, the owner, the defendant says, well, that was coerced. They still challenge the officer's decision to give the property to a third party. I can't imagine why they would require a notarized document, written document, if it weren't that they have lots of problems or have had lots of problems with turning over property to third parties and ending up in litigation or whatever. And if that really happens, why is that not a reasonable policy which would control the entire course of events? Once you have the property of the arrestee that you need to deal with, you take it on to the police department and store it there, absent some notarized permission for somebody else to get it. Why is that not a reasonable approach? I think, Your Honor, first I would just note that in the car cases, there's never any suggestion. That's different. Okay. I think there are differences between a car and leaving a backpack on the side of the street. I agree with you, but with the specific issue of liability of a third party, like lawsuits and liability of a third party, none of the car cases talk about needing to get a notarization or needing to get some sort of valid anything from the third party before turning over the car. And presumably a car is very valuable. It's also a lot easier to identify in return. I guess the other response is that I do think that on the scene is different from when the person has already been taken into custody and has already been booked and the property is being turned over by the police because at that point, they do have primary custody of it. Whereas on the scene, I don't think the officers, I think that the fleeting possession that they took of the backpack was kind of simultaneous to when Ms. Gay came and asked for the backpack. I think, and the other issue that, or the other point that I would make is, why is that so different? If the concern is the officers being sued or challenged for letting the property go to a third party, why is it different? What's the difference between it happening on the scene and happening at the police department? Because I think, because they haven't actually taken it into their custody yet. It's not really theirs yet when Ms. Gay comes. Do you think if they had just left it on the sidewalk, they'd be? I mean, I'm not arguing that they should have left it on the sidewalk. No, but if they had, well, if you're not arguing they should have left it on the sidewalk, then you're essentially saying they really should have taken it into their custody, maybe should have given it to the woman who was there. But it's not like they don't have control and they really should exercise control of it because they should definitely not just leave it on the street. Your Honor, I would like to reserve some time for rebuttal. Thank you. But you didn't answer. Do you want to answer my question? I think, I mean, I think I tried to answer it and maybe unsatisfactorily. Thank you. Thank you. Mr. Paul. Good morning. May it please the Court, Wayne Paul on behalf of the United States. On the facts of this case, the police seized and possessed the backpack under a reasonable, non-pretextual community caretaking rationale. But for the search incident to arrest, the backpack would have been inventoried and the firearm would have been discovered. I want to start off by talking about what the parties agree on. The parties agree in the proceedings below that the police properly seized and possessed the backpack. Judge Hart, as you indicated just earlier, they couldn't have simply left the backpack on the street. This is not a car case on private property. This is a backpack on a public street. And so the police properly assumed possession under the community caretaker standard. I just understood counsel to say differently. Basically, they were not yet, they hadn't yet done anything with it at that point. They admitted they didn't have any basis to, well, they thought they had a basis, obviously, to search it, which turned out to be unlawful. That was their plan. And they admit they didn't think there was anything dangerous in the bag. So at that point, when they're all standing there and the bag is there and you've got this third party who wants to take the bag, who the defendant has called his girl, why do you argue the police have already seized it at that point? And on what basis have they seized it? Well, if they were operating on a pre-nap thought, that it was simply the backpack was of the person. And so simpler to a personal effect that you maintain initial possession, defense counsel below agreed with that posture. At that point, if there's a person there willing, ready, willing and able to take the bag, and she says, I'm ready, willing and able to take the bag, and the defendant has called her over, get my girl, get her over here, and she's following them along, and then they're saying, no, no, no, no, you can't have it, because we're going to open it up right here and search it incident to arrest. We've got to assume none of those facts would have happened. Yes, the girlfriend would have still been there. She would have been following along saying, can I take the bag? Can I take the bag? But the officers would not have said, nope, nope, nope, because at that point, they don't have that basis to say so. So I'm not sure how you say there's been a seizure at that point on any basis. You've got this person, and why you can say that's community caretaking when the defendant and the girlfriend apparently are very fine to have the bag taken off with her. So who are they protecting at that point in the community? They're protecting the defendant's property. There's a duty of care owed to the defendant. The defendant is there. The defendant is there. If it's his property, and he says, this is my girlfriend, give it to her, how are they protecting the defendant's property? With all due respect, he does not say give her the property. Because he wasn't asked. Right, and there's no obligation. So the nub of this case. Stop there. Stop there. There's no obligation, but we're in a counterfactual scenario. It's your obligation to prove what would have happened had the officers not walked along and said, nope, nope, nope, because we're going to open it right now, because we think we have authority. What would have happened had they had no authority to open the bag? That's what they should have answered at the hearing. That's what they did answer. How do they rely now on the facts that did happen when they thought they had authority? And they did answer that on the record below. Officer Carman indicated that the backpack would have remained with police under the community caretaker function based on a personal effect. With the car cases, a backpack is not a car. And so it's a personal effect, which is a little bit different than a car. It's a personal property. As Judge Hart said earlier, there is a policy in place. Not that a policy is required. Under Sanders, a standardized policy is not required in this case. However, it's there. It exists. And the DPP. There was a question about whether it applies on the scene as opposed to at the police station. Is there any evidence that it was the policy that you required a notarized written document when you're on the scene and somebody says, and the defendant says, give it to her? And the defendant does not say that. No, no, no. I'm saying if that had happened, does the record indicate that the officer would have said, no, you've got to provide us a notarized letter? Well, let me clarify the policy. The Denver Police Department policy says any officer coming into possession of property will deliver that property to the evidence and property section. There's another section in the manual that talks about the notarized letter. So once that property has entered the possession of the police department, then a notarized letter is required for a third party or a release of that property to third party. In this case, going back to Judge. So there really is no reason for anybody to worry about whether NAP, whether they could or could not have searched the incident to arrest because you're going to take it anyway. No matter what, you're taking it. I would take issue with the character. It doesn't matter if there's anybody there, if there's anybody to protect, if we're worried about whether the defendant knows the person who's asking for it. You're saying, and that's the testimony, none of that matters. Well, what I'm saying is that there's a difference between the brethren of the car cases in that a car can be locked and secured. A car can simply be left behind. And that was at issue in Sanders at the Goodwill parking lot on private property. Here we have a defendant in NAP. Was there somebody in that case that was standing there ready, willing, and able, the girlfriend, to drive the car off? Which case, Judge? In the case we're referring to. NAP or Sanders? NAP there was. Of course there was. In NAP. I mean in Sanders. In Sanders there was. In fact, the individual Sanders said there's a third party. Could you release the car to the third party? That particular individual didn't have a driver's license. So the question came down to you could have left it in the Goodwill parking lot. But here we've got, let's say, someone akin to a person with a driver's license. It's a person who is his girlfriend who he's asked, who he could have been asked, can she take the bag? We have a person standing there wanting to take the bag. So how is this similar? On that issue. They don't need to lock up the car or take care of the bag. It's just not the same. It's not. And there's a reason it's not in that there's still an issue of liability. And, secondly, in this case, first the individual says, can I have his bag? Then she says, can I have my bag? There's some concern as to the reliability of this individual. It's your burden to prove now that they would have had they not had any authority to search that bag, which they don't, not said anything further, just kept saying nope, nope, nope to her. And is that the position that the government is taking, that regardless we're going to say nope, nope, nope. We don't care who you are. We don't care what the defendant says or doesn't say. We're just going to keep walking regardless. The touchstone is reasonableness when it comes to the Fourth Amendment. And there's a Supreme Court case on point. In Bertine, Colorado versus Bertine back in 1987, the court did not involve a car and a backpack inside the car. And they talked about whether it was reasonable. And the court focused on whether there was bad faith, a ruse, or a sole purpose of investigation, the motive. They focused on that. The Supreme Court did say specifically it does not turn on the existence of less intrusive means. It's not what could be achieved in seeking alternative arrangements. It is what the Fourth Amendment requires. And so the Bertine did not place an affirmative duty on officers. I'm not suggesting there was an affirmative duty on officers, and I think that's what the district court was struggling with here. And so if there's not an affirmative duty, then what the officers did with the backpack was simply reasonable under the circumstances. But what you just told me was that the officer testified he was going to take it regardless. How is that reasonable under this scenario with a person present, ready, willing, and able to take it? How is that reasonable? Under the community caretaking standard, it not only protects the defendant's property, it also, there's other two purposes, which is to protect police from potential danger. Protects it from himself, you mean? Presumably he's going to agree to have her take it, so you're protecting him from himself. Under the standard at the time the officers were operating under, that the backpack was just as similar as somebody's wallet. The money in the bag, and counsel pointed this out, the money was not in the bag. The money was in the pockets. And the only thing that the defendant did say was. That's not really relevant. They don't know that at that point. And they don't know that there's contraband in the bag. They think they don't have any reason. They admit they have no reason to think there's anything in the bag. That's the problem that you have. What we have here, though, Judge Morris, is an officer who simply made a mistake, was candid. All parties agreed below as to that candor. What was the mistake? The mistake was not understanding that. The district court, I'm sorry. It's OK. The district court basically said, he's not going to believe you when you say the officers would have just taken it off the scene. Regardless, no matter what, they were going to take it in inventory because they needed to do that. He said, yeah, I know you testified that way, but that can't be right. Don't we have to accept that testimony? And you seem to be saying that today again, which is it didn't matter who was present or what their authority was or what the defendant might have wanted to be done with the bag. They were going to take it, and they were going to inventory it. My argument, Judge Morris, is that the officers came into possession of the bag under a community caretaker standard. That is not being challenged. I believe what's being challenged, as you see from the record below, is that counsel was arguing, I can't challenge that they have possession of the bag at that time, but the challenge is, do they have an obligation to give it back, to release it, to dispossess themselves of the bag? My comment on just since Knapp was raised as a potential dead letter and that counsel's arguing, that's an identical situation. It's simply not. The Knapp case involved police having bad faith and a motivation to get inside that purse. In that case, Knapp herself implored police officers to give the purse to her friend, to her boyfriend, to allow her to lock up that purse in her truck safely and securely. Police said no. Why? Because they were motivated to get inside the purse. That is not the case here with Braxton. There was no motivation. There was no claim of bad faith in this case. It was simply that Officer Carman made a mistake as to the identification of Knapp as controlling law. That's the simpleness of it. To comment on Sanders, in the Sanders case, the government's arguing that a backpack, of course, is not a car and that Sanders is tailored for a car. You can still apply Sanders to this situation. However, in this case, since it was on public property, a standardized policy is not required. Nevertheless, there is a standardized policy of possession and then notarization of a letter to release. Let me ask about the policy because I'm getting confused here. If there really was a policy that they had to take possession of the backpack and take it to the police department, why doesn't that solve the factual issue of what they would have done if they hadn't illegally searched under the theory that it was incident to an arrest? Why does that not establish that, in fact, they would have taken it to the police department? Maybe you argued that, but I didn't hear you say that explicitly. I think it's an argument that can serve in the sense that they are obligated to take the backpack. But I would argue that there is some ability, there's some room, as in Bertine and in Trujillo, noted that there is some room for discretion on behalf of the police officers. There is some room. Is that what the district judge said, I don't believe you would have taken it? What was it that he said that he didn't believe the officers would have seized the backpack? I think consistent with Creighton in the luggage outside the hotel, the judge was looking at it from the perspective of the officers in the field, in the moment, operating at the time. What did he not believe? I'm not asking a legal question. What did he not believe about what the officers told him? What did the judge not believe? As I understood Judge Moritz's question, it was don't we have to adopt the district judge's finding that the officers would not have taken the backpack? And Judge Moore below had indicated that on the facts of this case, what he had was a stranger coming out of the darkness asking for a bag. And he differentiated that with a car that was stopped with a DUI and a passenger in the car. And so that sometimes passengers will take a car based on the driver saying, well, we'll have the passenger drive the car home. But in Judge Moore's perspective, what did the officers see? What were they doing? In the videos, the body cam is pretty clear in this case, that under the circumstances, when you have a person where, as Officer Kerman testified, that he didn't know the relationship. And it wouldn't have mattered, you know, based on the reasonableness of the community caretaking standard. Here, according to Judge Moore, she was a stranger. And she requested his backpack and then requested her backpack. She was unreliable. Braxton didn't ask. And I think that's significant because with Knapp, with Sanders, with Woodard, all of the defendants, all of the folks who were arrested, did ask. And I think that's a significant distinction. And that also, I assume my time has expired. No further questions. Thank you. Thank you. I think she had a minute. Give her a minute and a half since the government went over half a minute. Thank you. Just briefly, Your Honors, I'd like to pick up with this issue of the policy. I think, Judge Hartz, you were asking about the difference between policy on the scene and a policy at the station. You raised that distinction, and I hadn't made that distinction. But you're saying there clearly was a difference? I think there is a difference because the possession at the scene was just a fleeting possession. And it's akin to any sort of seizure of a car that can happen momentarily, and then the driver goes on their way versus taking the car into- You don't think the officers were responsible for that backpack once they arrested the defendant? That if they had just left it there- I think the timing- That the defendant would have had a good civil case if anything happened to the backpack? I think the timing was such that Ms. Gay arrived simultaneously that the possession was so fleeting. Just briefly, I would also like to add that even if there was a valid policy in place, the government still needs to satisfy the Sanders factors. So Sanders requires valid policy and satisfaction of the Sanders factors, which they can't do. And then in addition to that, if a notarization letter was required, there's really no reason why they couldn't have gotten such a letter at the scene, if that was their policy that they required a letter to turn over the backpack. They could have- They can just have a stack of those notarization letters in the squad car if necessary. I see that my time has expired. Thank you. Thank you, Counsel. Thank you, Counsel. Case is submitted.